UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLUS ENTERPRISES LLC d/b/a PLUS FUNDING GROUP,<br><br>Plaintiff,<br><br>*- against -*<br><br>SUN TRADING INTERNATIONAL, LLC, SPECTRA WORLDWIDE, LLC, DEBRA SANDS, and GLENN SANDS,<br><br>Defendants. | **16 Civ. 8987 (VB) (PED)**<br><br>**REPORT AND RECOMMENDATION** |

**TO:   THE HONORABLE VINCENT L. BRICCETTI,
        UNITED STATES DISTRICT JUDGE**

## I.    INTRODUCTION

On November 18, 2016, Plaintiff Plus Enterprises LLC doing business as Plus Funding

Group ("Plaintiff" or "Plus Enterprises") commenced this action against Defendants Debra Sands,

Spectra Worldwide, LLC ("Spectra"), Sun Trading International, LLC ("Sun Trading"), and Glenn

Sands (collectively, "Defendants"), Dkt. 1 (Complaint ("Compl.")), seeking damages for

Defendants' breach of the factoring and security contract ("Factoring Agreement"), breach of the

Continuing Guaranty, account stated, and constructive trust claims. Dkt. 1. The operative

complaint was filed on December 2, 2016 ("Am. Comp."). Dkt. 8. Defendants did not respond.

On February 8, 2017, Plaintiff filed its request to enter a default judgment against Defendants.

Dkt. 18. On February 15, 2017, Defendants' default was certified by the Clerk of the Court. Dkt.

20. On April 11, 2017, the Court ordered Defendants to show cause for why a default judgment

should not be entered. Dkt. 21. On May 9, 2017, the Court entered a default judgment against Defendants, Dkt. 26, and referred the matter to me for a damages inquest. Dkt. 25.

Presently before me are Plaintiff's proposed findings of fact and conclusions of law, ("P. Mem."), and accompanying exhibits. Dkt. 32. Defendants did not respond to this submission. Plaintiff seeks $246,391.56 from Defendants in compensatory damages as well as attorneys' fees and costs. P. Mem. at 7.

Having completed the inquest, and for the reasons set forth below, I respectfully recommend that the Court enter judgment against Defendants Sun Trading and Debra Sands only in the total amount of $202,566.44. This award consists of $186,587.64 for Plaintiff's unreimbursed advances on Defendant Sun Trading's invoices, $14,564.50 in attorneys' fees, and $1,414.30 in costs.

## II. THE INQUEST

On May 9, 2016, I issued a Scheduling Order for Damages Inquest, Dkt. 27, ("Scheduling Order"), directing Plaintiff to file and serve proposed findings of fact and proposed conclusions of law, and providing time for Defendant to file and serve a response thereto. The Scheduling Order further provided:

> The Court hereby notifies the parties that it may conduct this inquest based solely upon the written submissions of the parties. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). To the extent that any party seeks an evidentiary hearing on the issue of damages (or other monetary relief), such party must set forth in its submission the reason why the inquest should not be conducted based upon the written submissions alone, including a description of what witnesses would be called to testify at a hearing and the nature of the evidence that would be submitted.

*Id.*

On July 7, 2017, Plaintiff filed its Proposed Findings of fact and conclusions of law, affidavits, and accompanying exhibits. Dkt. 32. Plaintiff did not request an evidentiary hearing. Defendant did not respond.

## A. Plaintiff's Amended Complaint and Inquest Submission

The following facts are drawn from my review of Plaintiff's amended complaint and supported by Plaintiff's inquest submissions and are deemed established for the purpose of determining Plaintiff's damage award.

Plaintiff and Defendant Sun Trading entered into the Factoring Agreement on December 9, 2014 for an initial term for twelve months. Am. Comp., ¶¶ 16-19; P. Mem. at 3 (citing Factoring Agreement). The Factoring Agreement provided for its automatic renewal for successive six month periods. Am. Comp., ¶¶ 16-19; P. Mem., ¶¶ 15, 18 (citing Factoring Agreement). Under the Factoring Agreement, Plaintiff provided Defendant Sun Trading funding by purchasing Defendant Sun Trading's unpaid invoices. In exchange for the funding from Plaintiff, Defendant Sun Trading agreed to (i) reimburse Plaintiff's advances in the event Defendant Sun Trading's debts were not collectable, (ii) pay fees on Plaintiff's advances, and (iii) cover Plaintiff's attorneys' fees, costs and disbursements expended to recover any unreimbursed advances. Am. Comp. ¶¶ 20, 21. In addition, Defendant Debra Sands provided a Continuing Guaranty on December 9, 2014, whereby she personally guaranteed Defendant Sun Trading's payment obligations.[1] P. Mem., ¶ 16; Am. Comp., ¶ 27.

---

[1] Defendant Sun Trading and Defendant Debra Sands are the only Defendants that entered into formal executed agreements with Plaintiff. Hereinafter, I refer to them collectively as the "Contracting Defendants."

The Factoring Agreement provided that Defendant Sun Trading would submit a Schedule of Invoices, and actual invoices to Plaintiff seeking up to 80% of the face value of the receivables listed. Plaintiff would then provide an advance on those invoices. The Advance Rate of "[u]p to 80% [was] in Purchaser's [Plaintiff's] discretion" and Plaintiff was permitted to "in its sole credit and business judgment, without notice to [Sun Trading], advance any percentage of the Face Amount less than the indicated Advance Rate." P. Mem., ¶¶ 19-22 (citing Factoring Agreement §3 [Definitions] and § 2.1.4). In other words, Plaintiff had discretion to decide whether to advance any money, and how much money to advance on Defendant Sun Trading's invoices. *Id.* (citing Factoring Agreement, §§ 2.1.1-2.1.4).

From December 2014 through September 2016, Plaintiff made advances on Defendant Sun Trading invoices and purchase orders. P. Mem., ¶¶ 23-24. Plaintiff's inquest submission identifies the following advances made to Defendant Sun Trading that remain unreimbursed, ("Purchased Accounts"): (i) $25,000 on Invoice #023 for $72,000 billed to Ross Stores, Inc.; (ii) $4,490.84 on Invoice #030 for $5,644.80 billed to Gabriel Bros., Inc.; (iii) $20,160 on Invoice #031 for $25,000 billed to Beall's Outlet; (iv) $126,000 on four invoices for a total of $183,141 billed to Ross Stores, Inc.; and (v) $10,936.80 on an unnumbered invoice for $13,702.25 billed to Ross Stores, Inc. P. Mem., ¶¶ 14-28. All of the aforementioned invoices went unpaid for more than 90 days, which, under the Factoring Agreement, triggered Defendant Sun Trading's contractual obligation to repurchase the invoices from Plaintiff. Factoring Agreement, § 24. Defendant Sun Trading did not fulfill its contractual obligation.

In its inquest submission, Plaintiff requests $246,391.56 in damages, which includes $186,587.64 as reimbursement for its advances on Defendant Sun Trading's invoices, $21,552.96 in "Accrued Fees," and $38,250.96 in "Earned Fees." P. Mem., ¶¶ 43-44. Plaintiff's

4

inquest submission further requests varying amounts in attorneys' fees, and $1,414.30 in costs. P. Mem., ¶ 45 (citing Habas Decl.,[2] ¶ 33).

## III.   LEGAL STANDARD

It is well settled that, when a defendant defaults, the court must accept all of Plaintiff's allegations as true, except those pertaining to damages.  Fed. R. Civ. P. 8(b)(6); *see, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Proof of damages must be based upon admissible, authenticated evidence.  *House v. Kent Worldwide Machine Works, Inc.*, 359 Fed. Appx. 206, 207-08 (2d Cir. 2010) (summary order).  Plaintiff "bears the burden of establishing her entitlement to recovery and thus must substantiate her claim with evidence to prove the extent of damages."  *Dunn v. Advanced Credit Recovery Inc.*, No. 11 Civ. 4023, 2012 U.S. Dist. LEXIS 27205, at *2 (S.D.N.Y. Mar. 1, 2012), *adopted by*, 2012 U.S. Dist. LEXIS 47129 (S.D.N.Y. Apr. 3, 2012) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Plaintiff is entitled to all reasonable inferences that can be made from the evidence that is presented in support of its damages claims.  *See, e.g., Au Bon Pain Corp. v. Artect, Inc., et al.*, 653 F.2d 61, 65 (2d Cir. 1981).  However, "the district court cannot simply rely on the Plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty."  *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Moreover, "[w]here an inquest is conducted following a default judgment, it is generally

---

[2]        Declaration of Patricia E. Habas, Dkt. 32-2 ("Habas Decl.").

necessary for the Court to determine whether the allegations of the complaint, taken as true, are sufficient to establish the defendant's liability." *Weiwei Gao v. Sidhu*, No. 11 Civ. 2711, 2013 U.S. Dist. LEXIS 83446, at *6-7 (S.D.N.Y. June 12, 2013) (citing *PSG Poker, LLC v. DeRosa-Grund*, No. 06 Civ. 1104, 2008 U.S. Dist. LEXIS 59214, at *3 (S.D.N.Y. July 14, 2008)).

## IV.    DISCUSSION

Plaintiff's amended complaint asserted six claims, only three of which are addressed in Plaintiff's inquest submission.  Plaintiff seeks damages from the Contracting Defendants for its breach of contract, or, in the alternative, for its Account Stated claim (asserted against Defendant Sun Trading, Defendant Glenn Sands, and Defendant Debra Sands) or a Constructive Trust claim (asserted against all four Defendants, including Defendant Spectra).  Specifically, Plaintiff requests $246,391.56 in reimbursements and fees, including $186,587.64 for Plaintiff's advances on Defendant Sun Trading's invoices, $21,552.96 in Factoring Fees for "Accrued Fees," and $38,250.96 in Factoring Fees for "Earned Fees" under the Factoring Agreement.  P. Mem. at 7. Plaintiff's inquest submission further requests attorneys' fees, and $1,414.30 in costs.  P. Mem. at 7 (citing Habas Decl., ¶ 33).

For the reasons that follow, I respectfully recommend that the Court award Plaintiff $186,587.64 in damages, $14,564.50 in attorneys' fees, and $1,414.30 in costs (for a total of $202,566.44).

### A.  Breach of Contract Claims

"To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Hudson & Broad, Inc. v. J.C. Penney*

6

*Corp.*, 553 Fed. App'x. 37, 38-39 (2d Cir. 2014) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

Plaintiff has alleged (1) the existence of an agreement, here, the Factoring Agreement, and, in the case of Debra Sands, the Personal Guaranty, (2) adequate performance of the contract by Plaintiff because it timely provided Defendant Sun Trading with advances on its invoices as contemplated by the Factoring Agreement and evidenced by the bank records and invoices in evidence, (3) the Contracting Defendants' breach of its contracts when Defendant Sun Trading failed to repurchase its invoices from Plaintiff, and (4) Plaintiff's damages because of its unreimbursed advances.

Thus, Plaintiff's allegations are sufficiently well pleaded to establish the Contracting Defendants' liability on the breach of contract claims.

As a result of the breach, Plaintiff seeks a total of $246,391.56 in damages: (i) $186,587.64 for reimbursement of its advances on Defendant Sun Trading's invoices; (ii) $21,552.96 in "Accrued Fees"; and (iii) $38,250.96 in "Earned Fees." P. Mem., ¶¶ 43-44.

For the reasons discussed below, I respectfully recommend $186,587.64 damage award from the Contracting Defendants to reimburse Plaintiff for its advances on Defendant Sun Trading's invoices. The other categories of relief requested, however, are insufficiently supported to warrant an award of damages.

### 1. Defendant Sun Trading's Invoices

Plaintiff seeks $186,587.64 in damages for reimbursement of its advances on Defendant Sun Trading's invoices. P. Mem., ¶ 42. Plaintiff submits several invoices in support of this claim, setting forth the exact amounts advanced on Defendant Sun Trading's invoices, and bank records listing the corresponding wire transfers. Plaintiff's seeks reimbursement for the

7

following advances to Defendant Sun Trading: (i) $25,000 on Invoice #023 for $72,000 billed to Ross Stores, Inc.; (ii) $4,490.84 on Invoice #030 for $5,644.80 billed to Gabriel Bros., Inc.; (iii) $20,160.00 on Invoice #031 for $25,000 billed to Beall's Outlet; (iv) $126,000 on four invoices for $183,141 billed to Ross Stores, Inc.; and (v) $10,936.80 on an unnumbered invoice for $13,702.25 billed to Ross Stores, Inc.  P. Mem., ¶¶ 34-37.

All of the aforementioned unpaid invoices went unpaid for more than 90 days triggering Defendant's contractual obligation to repurchase the invoices.  Factoring Agreement, §§ 2, 13. Defendant Sun Trading, however, did not repurchase these invoices.  Under the plain terms of the Factoring Agreement, Plaintiff was entitled to reimbursement of its advance payments on Defendant Sun Trading's unpaid invoices.  *Id.*  Therefore, Defendant Sun Trading's failure to repurchase its invoices from Plaintiff or reimburse Plaintiff for its advances was a material breach of the Factoring Agreement and Defendant Debra Sands' failure to remedy this failure was a material breach of her Personal Guaranty.

Since "a successful plaintiff in a breach of contract action is entitled to damages in the 'amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract,'" *Scholastic, Inc. v. Snap TV, Inc.*, No. 09 Civ. 4349, 2011 U.S. Dist. LEXIS 38373, at *9 (S.D.N.Y. Apr. 8, 2011) (quoting *Indu Craft v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (other citations omitted), I recommend that Plaintiff be awarded damages of $186,587.64 from the Contracting Defendants to reimburse Plaintiff for the funds it advanced to Defendant Sun Trading with a contractual right to reimbursement.

## 2. Factoring Fees for "Accrued Fees" and "Earned Fees"

Plaintiff also seeks to recover $21,552.96 in Factoring Fees for "Accrued Fees," and $38,250.96 in Factoring Fees for "Earned Fees" from the Contracting Defendants.  The Factoring

Agreement defines "Factoring Fee" as "the Factoring Percentage multiplied by the Face Amount of a Purchased Account at the time that such Account is purchased by Purchaser [Plaintiff], for each Factoring Fee Period or portion thereof, that any portion thereof remains unpaid, computed from the date on which a Purchased Account was purchased to and including the Late Payment Date."[3] Factoring Fee, § 1.18. In other words, Defendant Sun Trading contracted to pay Plaintiff a Factoring Fee on all Purchased Accounts[4] equal to a percentage (the "Factoring Fee Percentage" from the sliding scale in Schedule A) multiplied by the face amount of a Purchased Account. Rubin Aff. ¶ 12 (citing Factoring Agreement §§1.18 and 1.19 [Definitions], § 4.1 and Schedule A). Plaintiff seeks two types of Factoring Fees on Purchased Accounts: (i) "Accrued Fees," which are fees that Plaintiff has *not yet collected*; and (ii) "Earned Fees," which are fees that w*ere paid by the Account Debtors[5] or charged back to Defendant Sun Trading.* Rubin Aff., ¶ 14.

Plaintiff seeks $21,552.96 in Accrued Fees, which Plaintiff claims is equal to the sum Plaintiff *would have earned* on the $172,700 of unpaid Purchase Accounts multiplied by the

---

[3]     "Late Payment Date" is defined as "the date which is ninety (90) days from the date on which a Purchased Account was purchased by the Purchaser [Plaintiff] or such other date as expressly stated on Schedule "A" hereto." Factoring Agreement, § 1.23.

[4]     The Factoring Agreement defines "Purchased Accounts" as "Accounts purchased hereunder which have not been Repurchased." Factoring Agreement, § 1.35. "Repurchased" is defined as "an Account has been repurchased when Seller [Defendant Sun Trading] has paid the Purchaser [Plaintiff] the then unpaid Face Amount." *Id.*, § 1.36. "Face Amount" is defined as "the face amount due on such Account at the time of purchase of the Account by the Purchaser [Plaintiff]." *Id.*, § 1.17.

[5]     "Account Debtor" is defined as "an entity or individual indebted to Seller [Defendant Sun Trading] pursuant to an Account subject to this Agreement." Factoring Agreement, § 1.2.

sliding scale Factoring Fee percentage set out in Schedule A. Rubin Aff., ¶¶ 39-40 (citing

Factoring Agreement, § 4.1., and Schedule A, Ex. 1). Plaintiff also seeks $38,250.96 in Earned

Fees on Purchased Accounts that Plaintiff *was able to collect* on "paid for" Purchase Accounts,

based on the face value of the receivable purchased and the dates on which Plaintiff received

payments on those invoices. Rubin Aff., ¶¶ 39-40 (citing Factoring Agreement, § 4.1., and

Schedule A, Ex. 1). However, Plaintiff does not provide any evidence of this separate group of

"paid for" Purchase Accounts. Moreover, the Factoring Fee is based on a sliding scale that

contingent on "the number of days to pay and Close,"[6] yet Plaintiff does not provide the dates of

when it received full payment by Defendant Sun Trading or when the unpaid Face Amount was

charged to the Reserve Account[7] by Plaintiff, for any of the Purchase Accounts, whether paid or

unpaid. Without more, these damages cannot be ascertained.

### B. Account Stated Claim

In the alternative, Plaintiff seeks a damage award of $243,221.56 for its Account Stated

claim against the Defendant Sun Trading, Defendant Glenn Sands, and Defendant Debra Sands.

An account stated exists where a party to a contract receives bills or invoices and does

not protest within a reasonable time. *Bartning v. Bartning*, 16 A.D.3d 249, 250 (1st Dep't 2005)

(citing *Herrick, Feinstein LLP v. Stamm*, 297 A.D.2d 477, 746 (1st Dep't 2002)).

---

[6]      "Closed" is defined as "a Purchased Account is closed upon the first to occur of
(i) receipt of full payment by Purchaser of the then-unpaid amount of Face Amount of such
Purchased Account or (ii) the unpaid Face Amount has been charged to the Reserve Account by
Purchaser pursuant to the terms thereof." Factoring Agreement, § 1.10.

[7]      The "Reserve Account" is a bookkeeping account on the books of the Purchaser
[Defendant Sun Trading] representing an unpaid portion of the Purchase Price, maintained by
Purchaser [Defendant Sun Trading] to ensure Seller's performance with the provisions [in the
Factoring Agreement]. Factoring Agreement, § 1.38.

Here, Plaintiff alleges that Defendant Sun Trading repeatedly breached its obligations under the Factoring Agreement and that it subsequently demanded payment from Defendant Sun Trading. Am. Comp., ¶¶ 51, 52. Plaintiff also alleges that it demanded payment and that Defendant Sun Trading, Defendant Debra Sands, and Defendant Glenn Sands have defaulted and refused to pay amounts due to Plaintiff. Am. Comp., ¶ 52.

Plaintiff's allegations are sufficient to establish Defendant Sun Trading and Defendant Debra Sands's liability on the Account Stated claim because they were parties to the contracts at issue. Nonetheless, I respectfully recommend that the Court decline to award damages for this alternatively plead claim because it would be duplicative of the damages awarded for Plaintiff's breach of contract claim.

On the other hand, the allegations in Plaintiff's amended complaint do not establish that Defendant Glenn Sands's was a party to either contract and therefore fail to establish Defendant Glenn Sands's liability for the Account Stated claim.

Accordingly, I respectfully recommend that the Court decline to award any additional damages for this claim.

### C. Constructive Trust Claim

Plaintiff seeks unquantified damages for its Constructive Trust claim against all four Defendants. This is the only claim addressed in Plaintiff's inquest submission asserted against Defendant Spectra.

The four elements for a constructive trust under New York law are: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment. *Rosenblatt v. Christie, Manson & Woods Ltd.*, 195 Fed. App'x. 11, 13 (2d Cir. 2006) (summary order) (citing *Superintendent of Ins. v.*

11

*Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 212 (2d Cir. 2004)). However, the existence

of a written agreement has been held by a number of courts in the Second Circuit to bar a

constructive trust. *Id.* Since Defendant Sun Trading and Defendant Debra Sands had actionable

written agreements with Plaintiff, I find that the Constructive Trust claim fails against the

Contracting Defendants. I analyze whether Defendant Spectra and Defendant Glenn Sands

(collectively, the "Non-Contracting Defendants") can be liable on the Constructive Trust claim

below.

### 1. Non-Contracting Defendants

#### a. Defendant Spectra

Although Defendant Spectra was not involved in the underlying events, Plaintiff argues

that Defendant Spectra is liable to Plaintiff on its constructive trust claim under an alter ego

theory of liability.

To establish Defendant Spectra's liability on the theory of piercing the corporate

veil because the corporation at issue is the defendant's alter ego, Plaintiff must establish that the

owners of the entity, through their domination of it, abused the privilege of doing business in the

corporate form to perpetrate a wrong or injustice against the party asserting the claim such that a

court in equity will intervene. *Tap Holdings, LLC v Orix Fin. Corp.*, 109 A.D.3d 167, 174 (1st

Dep't. 2013) (citing *ABN AMRO Bank, N.V. v MBIA Inc.*, 17 N.Y.3d 208, 229 (2011)).

However, the mere claim that the corporation was completely dominated by the defendants, or

conclusory assertions that the corporation acted as their "alter ego," without more, will not

suffice to support the equitable relief of piercing the corporate veil. *Damianos Realty Group,

LLC v. Fracchia*, 35 A.D.3d 344, 344 (1st Dept. 2006) (citing *Morris v. State Dep't of Taxation

& Fin.*, 82 N.Y.2d 135, 140-141 (2006)) (citations omitted). Indeed, a cause of action seeking

this type of equitable relief is governed by a heightened pleading standard. *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 109-110 (2002) (citations omitted).

In support of the theory that Defendant Sun Trading and Defendant Spectra are alter egos of each other Plaintiff alleges only that "Glenn Sands and his son Brent Sands are the only members of Defendant Spectra" and "upon information and belief" Defendant Sun Trading and Defendant Spectra share "office space, employees, and [are] owned or operated by the same individuals, Glenn Sands and Debra Sands." Am. Comp. ¶¶ 6, 13. Plaintiff's terse allegations are insufficient to meet the high pleading standard required to impose alter ego liability on an otherwise uninvolved entity.

Since this is the only claim Plaintiff has pursued against Defendant Spectra, I respectfully recommend that the Court dismiss Defendant Spectra from the action.

### b. Defendant Glenn Sands

Plaintiff seeks to hold Defendant Glenn Sands liable for its constructive trust claim but fails to articulate any theory under which a fiduciary relationship existed between Defendant Glenn Sands and Plaintiff. Without a fiduciary relationship between Defendant Glenn Sands and Plaintiff, Plaintiff's constructive trust claim against Defendant Glenn Sands fails. If, however, Plaintiff establishes that Defendant Glenn Sands is an alter ego of Defendant Sun Trading by virtue of his status as a corporate officer, Plaintiff could pierce the corporate veil and thereby establish a fiduciary relationship between Defendant Glenn Sands and Plaintiff.

To justify piercing the corporate veil here, Plaintiff must plead that Defendant Glenn Sands (1) exercised complete dominion and control over the corporation, and (2) used such dominion and control to commit a fraud or wrong against the plaintiff, which resulted in injury.

13

*Damianos Realty Group, LLC v. Fracchia*, 35 A.D.3d 344, 344 (1st Dept. 2006) (citing *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140-141 (2006)) (citations omitted). A cause of action seeking to hold corporate officials personally responsible for a corporation's misconduct is governed by an enhanced pleading standard. *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 109-110 (2002) (citations omitted). The pleading must allege that the acts complained of, whether or not beyond the scope of the defendant's corporate authority, were performed with malice and were calculated to impair the plaintiff's business for the personal profit of the defendant. *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 408 (S.D.N.Y. 2009) (citing *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 109-110 (App. Div. 1st Dept. 2002) (citations omitted)). Moreover, a failure to plead in nonconclusory language facts establishing all the elements requires dismissal of the action. *Joan Hansen & Co.*, 296 A.D.2d 103, 109-110 (citations omitted).

Here, Plaintiff does not allege that Defendant Glenn Sands acted in anything other than a corporate capacity. Although Plaintiff alleges that Defendant Glenn Sands was an officer of the corporation, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 142 (1993). But Plaintiff fails to allege that Defendant Glenn Sands used his position to commit a fraud or wrong against Plaintiff. In fact, Plaintiff's amended complaint scarcely mentions any conduct of Defendant Glenn Sands in relation to the Factoring Agreement.

Without more, I find that the allegations in the amended complaint are insufficiently pled to establish a fiduciary relationship between Defendant Glenn Sands and Plaintiff. Therefore, Plaintiff does not adequately plead a constructive trust claim against Defendant Glen Sands.

Accordingly, I respectfully recommend that no damage award be entered against either Defendant Spectra or Defendant Glenn Sands.

### D. Attorneys' Fees & Costs

Plaintiff seeks attorney's fees and $1,414.30 in costs it has incurred since commencing this action on November 18, 2016. P. Mem., ¶ 45; Habas Decl., ¶¶ 29, 33.

The Factoring Agreement provided that Defendant Sun Trading would reimburse Plaintiff for all costs and expenses, including attorneys' fees Plaintiff incurred in the enforcement of its rights under the Agreement. P. Mem., ¶ 17; Rubin Decl., ¶ 43 (citing Factoring Agreement, § 24). In particular, the Factoring Agreement provided that Defendant Sun Trading would reimburse Plaintiff "on demand" for:

> the actual amount of all costs and expenses, including attorneys' fees and expenses, which Purchaser has incurred or may incur in negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith, all of which shall be paid contemporaneously with the execution hereof; protecting, preserving or enforcing any lien, security interest or other right granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims; the actual costs, including photocopying (which, if performed by Purchaser's employees, shall be at the rate of $.10/page), travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which Seller is a party or otherwise associates ... [and] any other attorneys' fees and expense which Purchaser has incurred or may incur in any way arising out of this Agreement, no matter how incidental, remote or minor.

Factoring Agreement, § 24.

Under New York law, a contract provision that one party to a contract pay the other party's attorneys' fees in the event of breach is enforceable "so long as those amounts are not unreasonable." *Weiwei Gao v. Sidhu*, No. 11 Civ. 2711, 2013 U.S. Dist. LEXIS 83446, at *13

(S.D.N.Y. June 12, 2013) (citing *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)). Courts should review reasonableness of attorney's fees in breach of contract case even where contract provides for payment of fees by losing party, "[b]ecause a fee-shifting clause can produce perverse incentives for a litigant." *Weiwei Gao v. Sidhu*, No. 11 Civ. 2711, 2013 U.S. Dist. LEXIS 83446, at *13 (S.D.N.Y. June 12, 2013) (citing *Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (internal citation omitted)). In particular, a court should ask "whether the fee arrangement is 'grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement.'" *Weiwei Gao v. Sidhu*, No. 11 Civ. 2711, 2013 U.S. Dist. LEXIS 83446, at *13 (S.D.N.Y. June 12, 2013) (citing *Diamond*, 979 F.2d at 20 (quoting *F.H. Krear*, 810 F.2d at 1263)).

For the reasons that follow, I respectfully recommend that the Court award $14,564.50 in attorneys' fees and $1,414.30 in costs.

### 1. Attorneys' Fees

Plaintiff retained Rogers, Habas, Verrilli & Eisen, P.C. ("RHV&E") as counsel in this action. Habas Decl., ¶ 28, Ex. 20. Plaintiff provided the Court with the contemporaneous billing records of its counsel at RHV&E, which note hours expended, dates of work, and brief descriptions of the tasks performed its attorneys and staff, including Patricia Habas, Partner, Maria Condoluci, Associate, Ryan Sweeney, Associate, Lynne Laub, Paralegal, Tom Fallon, Paralegal, Alan Nau, Paralegal, and Alyssa Fulginiti, Law Clerk. Habas Decl., Ex. 22.

Plaintiff's inquest submission is rife with inconsistencies. For example, Plaintiff's Proposed Findings of Fact and Conclusions of Law first claims the attorneys' fees incurred are $17,164.50, P. Mem. at 1, but then requests $22,313.78 at the conclusion. P. Mem., ¶ 45. There

is a similar discrepancy in the declaration of Patricia E. Habas who first declares that Plaintiff has incurred $17,083.78 in attorneys' fees, Habas Decl., ¶ 29, but later seeks $22,313.78 in attorneys' fees.[8] Regardless, according to counsel's billing records, Plaintiff's incurred attorneys' fees break down as follows: $3,161 for 9.4 hours of work completed by Patricia Habas, $2,070 for 10.4 hours of work completed by Ryan Sweeney, Associate, $8,909.00 for 45.8 hours of work completed by Marie Condoluci, Associate, $77.50 for 3.6 hours of work completed by Lynne Laub, Paralegal, $157.50 for 1.5 hours of work completed by Tom Fallon, Paralegal, and $189.50 for 1.8 hours of work completed by Alan Nau, Paralegal (a total of $14,564.50 for 72.5 hours worked). Habas Decl., Ex. 22. The services performed by these attorneys included obtaining and reviewing pertinent background information and documents, preparing the summons and complaint, research, obtaining a default judgment, and submitting papers to establish Plaintiff's damages.

Based on my review of the submitted attorney time records and given the nature of the work they performed, the hours expended on this case by attorneys appear reasonable. Further, the rates charged by counsel — from $150 per hour to $370 per hour — are within the range of prevailing market rates in this district for attorneys of similar experience and staff.

### a. Reasonable Hourly Rate

Plaintiff seeks to recover fees for work performed by its counsel and counsel's support staff. Habas Decl., ¶¶ 28-33. Plaintiff's counsel, Patricia Habas, seeks a rate of $380 per hour billed in 2016 and a rate of $390 per hour of work billed in 2017. Habas Decl., ¶ 30. Patricia Habas is managing partner at RHV&E and has practiced commercial litigation since 2012.

---

[8]    Plaintiff's asserted costs remain consistent (at $1,414.30) throughout Plaintiff's submission.

Given Ms. Habas's 12 years of experience practicing law primarily in general commercial litigation, Ms. Habas's requested hourly rates are in line with the rates generally awarded in this District to attorneys with commensurate levels of experience. *6D Global Techs., Inc. v. Bei Lu*, No. 15 Civ. 1120, 2016 U.S. Dist. LEXIS 59016 *8-9 (S.D.N.Y. May 3, 2016) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases.") (quoting *Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 Civ. 4968, 2015 U.S. Dist. LEXIS 167642, 2015 WL 8784211, at *11 (S.D.N.Y. Dec. 15, 2015)).

Plaintiff's counsel also seeks to recover fees for the work of two associates, Marie Condoluci and Ryan Sweeney, three paralegals, Lynne Taub, Tom Fallon, and Alan Nau, and one law clerk, Alyssa Fulginiti. Plaintiff fails to specify the hourly rate for either associate but indicates that they charge between $230 and $260 per hour for associates' work depending on their individual experience. Habas Decl., ¶ 31. The requested hourly rates for associates and staff are in line with the rates generally awarded in this District to attorneys with commensurate levels of experience. *6D Global Techs., Inc. v. Bei Lu*, No. 15 Civ. 1120, 2016 U.S. Dist. LEXIS 59016, at *8-9 (S.D.N.Y. May 3, 2016) (citing *Rubenstein v. Advanced Equities, Inc.*, No. 13 Civ. 1502, 2015 U.S. Dist. LEXIS 16726, 2015 WL 585561, at *6 (S.D.N.Y. Feb. 10, 2015) (approving a "blended" billing rate for senior and junior associates of $350 per hour, when $250 would ordinarily be the rate for junior associates)).

Accordingly, I find that Ms. Habas's attorneys' fees were appropriately calculated using the rates of $380 per hour in 2016 and $390 per hour in 2017 and that the associates' hourly rate range of $230 to $260, and $150 per hour for staff work were also acceptable.

## b. Reasonable Hours Expended

Plaintiff's counsel provided contemporaneous time records that document the 72.5 hours

of work counsel and its staff performed in connection with this matter. Habas Decl., ¶¶ 28-33.

Plaintiff's counsel billed for a total of 65.6 hours. *Id.* Plaintiff counsel's paralegals billed a total

of 6.9 hours. *Id.*

### TABLE 1. Attorneys' Fees

| YEAR: ATTORNEY OR PARALEGAL | HOURLY RATE | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| 2017: Patricia Habas, Partner | $232.70 | 1.5 | $349.00 |
| 2017: Ryan Sweeney, Associate | $23.00 | 0.3 | $69.00 |
| 2017: Marie Condoluci, Associate | $232.02 | 35.1 | $8,144.00 |
| 2017: Tom Fallon, Paralegal | $157.78 | 0.9 | $142.00 |
| 2017: Alan Nau, Paralegal | $105.28 | 1.8 | $189.50 |
| 2016: Patricia Habas, Partner | $355.95 | 7.9 | $2,812.00 |
| 2016: Ryan Sweeney, Associate | $198.00 | 10.1 | $2,001.00 |
| 2016: Marie Condoluci, Associate | $71.49 | 10.7 | $765.00 |
| 2016: Lynne Laub, Paralegal | $21.53 | 3.6 | $77.50 |
| 2016: Tom Fallon, Paralegal | $25.83 | 0.6 | $15.50 |
| **TOTAL** | | 72.5 | $14,564.50 |

I find that Plaintiff's request for an award for the 72.5 hours spent on the case is

reasonable. The time records are adequately documented, provide sufficient specificity about the

nature of work done, and do not reflect any excessive hours billed. There are no vague entries

nor inconsistencies or other deficiencies in the billing records. Accordingly, although "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application," *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)(internal citations omitted), no such reduction is warranted here.

Based on my calculations in Table 1, I recommend that the Court award a total of $14,564.50 in attorneys' fees.

### c. Undocumented Hours Worked

In a single paragraph of the Habas Declaration, Plaintiff seeks an additional fee of $5,230, which is unaccounted for in Plaintiff's counsel's billing records. Habas Decl., ¶ 32.

Plaintiff indicates that the additional $5,230 fee comes from five additional hours of work done by Patricia Habas (billed at $390 per hour in 2017 according to paragraph 30), fifteen hours of work done by associate Marie Condoluci and eight hours by a law clerk, who Plaintiff notes, bills at $150 per hour of work. Habas Decl. ¶ 32. This paragraph provides scant information from which to validate this additional attorney fee. Since Plaintiff is entitled to all reasonable inferences that can be made from the evidence that is presented in support of its damages claims, *see Au Bon Pain Corp. v. Artect, Inc., et al.*, 653 F.2d 61, 65 (2d Cir. 1981), I used the limited information in Plaintiff's inquest submission to try to validate the undocumented fees to a reasonable certainty. Based on paragraph 32, Marie Condoluci's hourly rate would be approximately $139 — less than the hourly rate Plaintiff's counsel allegedly bills for its paralegal staff and law clerk. Habas Decl., ¶ 31. Moreover, this number is inconsistent with Plaintiff's claim that its associates are paid between $230 and $260 per hour. *Id.* Simply put, Plaintiff's math does not compute. Plaintiff "bears the burden of establishing [its] entitlement to

recovery and thus must substantiate [its] claim with evidence to prove the extent of [its] damages," *Dunn v. Advanced Credit Recovery Inc.*, No. 11 Civ. 4023, 2012 U.S. Dist. LEXIS 27205, at *8 (S.D.N.Y. Mar. 1, 2012) and here failed to carry that burden.

On this record, I am unable to ascertain to a "reasonable certainty" the validity of the undocumented $5,230 in fees requested by Plaintiff. Accordingly, I respectfully recommend that the Court deny this portion of Plaintiff's fee request.

## 2. Costs

Plaintiff seeks $1,414.30 in costs. Habas Decl., ¶¶ 29, 33. Specifically, Plaintiff seeks reimbursement of the Court's $400 filing fee for its complaint, $956.10 in service of process fees, $55.50 in postage costs, and $2.70 for printing and duplication costs for a total of $1,414.30. *Id.* Plaintiff provided contemporaneous billing records of these costs. Costs are defined as "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). I respectfully recommend that Plaintiff be reimbursed $1,414.30 in costs for the filing fee, printing, postage, service fees, and duplication costs because these are reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to clients.

## V.    CONCLUSION

For the foregoing reasons, I recommend that Plaintiff be awarded damages against Defendant Sun Trading and Defendant Debra Sands in the total amount of $202,566.44 as follows:

    A.    **BREACH OF CONTRACT** in the total amount of $186,587.64;

    B.    **ATTORNEYS' FEES** in the total amount of $14,564.50; and

    C.    **COSTS** in the total amount of $1,414.30.

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service promptly.

Dated:   November 29, 2017
         White Plains, New York

Respectfully submitted,

**PAUL E. DAVISON**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days pursuant to Fed. R. Civ. P. 6(d), from the date hereof to file written objections to this Report and Recommendation. Fed. R. Civ. P. 6(a). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Vincent L. Briccetti, United States District Judge, at the Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas St., White Plains, NY 10601-4150, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.